1  Dan Lawton (State Bar No. 127342)
   dan@lawtonlaw.com
2  Joseph C. Kracht (State Bar No. 228507)
   joe@lawtonlaw.com
3  LAWTON LAW FIRM
   Emerald Plaza
4  402 West Broadway, Suite 1330
   San Diego, CA  92101
5  (619) 595-1370
   (619) 595-1520 (Telefacsimile Number)
6  www.lawtonlaw.com

7

8  Attorneys for Plaintiff Imprimis Pharmaceuticals, Inc.

9

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12

| 13 | IMPRIMIS PHARMACEUTICALS, INC., a Delaware corporation, | Case No. '16 CV 0296 LAB WVG |
|----|----|----|
| 14 | Plaintiff, | COMPLAINT FOR DAMAGES AND OTHER RELIEF FOR TRADEMARK INFRINGEMENT AND OTHER TORTS |
| 15 | v. | |
| 16 | OCULAR SCIENCE, INC., a California corporation; and DOES 1 through 20, | |
| 17 | | |
| 18 | Defendants. | |
| 19 | | |
| 20 | | |

21        Pursuant to Fed. R. Civ. P. 8(a), plaintiff Imprimis Pharmaceuticals, Inc.

22  ("plaintiff" or "Imprimis"), hereby files this complaint, and avers the following:

23                          OVERVIEW

24        This is a civil action in which Imprimis seeks, *inter alia*, damages and other relief

25  for trademark infringement and unfair competition.

26  ///

27  ///

28  ///

<u>JURISDICTION AND VENUE</u>

1. This action arises under the laws of the United States, Title 15 of the United States Code, and 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

2. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a) and (b), 1367, and 2201.

3. Venue is proper in this judicial district under pertinent law, including, *inter alia*, 28 U.S.C. §§ 1391(b), (c).

<u>THE PARTIES</u>

4. Imprimis is a corporation organized and existing under the laws of the State of Delaware and has as its principal place of business and is doing business in the State of California.

5. Defendant Ocular Science, Inc., is a corporation organized and existing under the laws of the State of California and has as its principal place of business and is doing business in the State of California. It is sometimes referred to hereinafter as "Ocular Science" or "defendant."

6. The true names and capacities, whether individual, corporate, associate, representative or otherwise, of defendants Does 1 through 20, inclusive, are unknown to Imprimis, who therefore sues them by such fictitious names. Imprimis will seek leave to amend this complaint to show the true names and capacities of said defendants when they are ascertained. Imprimis is informed and believes, and thereupon alleges, that each of the defendants named as a Doe, along with the named defendants, is responsible in some manner for the occurrences herein alleged, and that Imprimis' injuries herein alleged were legally or proximately caused by said defendants. Wherever it is alleged that any act or omission was also done or committed by any specifically named defendant, or by defendants generally, Imprimis intends thereby to allege, and does allege, that the same act or omission was also done and committed by each and every defendant named as a Doe, and each named defendant, both separately and in concert or conspiracy with the named defendants.

7.    At all times mentioned herein, defendants, and each of them, were the agents, servants, co-conspirators, or employees of one another, and the acts and omissions herein alleged were done or suffered by them, acting individually and through or by their alleged capacity, within the scope of their authority.  Each of the defendants aided and abetted and rendered substantial assistance in the accomplishment of the acts complained of herein.  In taking the actions, as particularized herein, to aid and abet and substantially assist in the commission of the misconduct complained of, each defendant acted with an awareness of his, its or its primary wrongdoing and realized that his, its or its conduct would substantially assist in the accomplishment of that misconduct and was aware of his, its or its overall contribution to, and furtherance of the conspiracy, common enterprise, and common course of conduct.  Defendants' acts of aiding and abetting included, *inter alia*, all of the acts each defendant is alleged to have committed in furtherance of the conspiracy, common enterprise, and common course of conduct complained of herein.

<u>BACKGROUND FACTS</u>

8.    In 2012 and 2014, respectively, applications nos. US 14/461,242 (priority to July 22, 2013) and 14/227,819 (priority to July 22, 2013) were filed with the U.S. Patent and Trademark Office.  Generally, these patent applications describe inventions for novel slow-releasing ophthalmic compositions containing triamcinolone acetate, moxifloxacin hydrochloride, triamcinolone acetate, and vancomycin and uses thereof in the treatment of acute infections of the eye and compositions for intraocular injection of therapeutically effective quantities of anti-bacterial and anti-inflammatory agents, as well as methods for fabricating the compositions and for using them in intraocular injections.  Imprimis is the assignee of the rights asserted in these applications.  The claimed inventions are highly useful for "dropless" cataract surgery, something that is attractive to both eye surgeons and patients who suffer from cataracts.  Imprimis' applications for patents published on October 30, 2014, and January 22, 2015, respectively.

9.     Imprimis is the owner of the following trademarks:  GO DROPLESS! (U.S. Serial No. 96143543), GO DROPLESS! – Logo (U.S. Serial No. 86143553), LESSDROPS (U.S. Serial No. 86497791), DROPLESS CATARACT THERAPY (U.S. Serial No. 86497090), and DROPLESS THERAPY (U.S. Serial No. 86497100) (collectively hereinafter referred to as the "Imprimis marks").  As a matter of law, Imprimis has the exclusive rights to the use of said marks and said trademarks are valid, subsisting, and in full force and effect.

10.    Imprimis has extensively used the Imprimis marks in the advertisement and promotion of its products and has spent large sums of money to promote and advertise its products under the Imprimis marks.  As a consequence, the Imprimis marks have become identified, in the United States and throughout the world, as signifying novel slow-releasing ophthalmic compositions containing triamcinolone acetate, moxifloxacin hydrochloride, triamcinolone acetate, and vancomycin and uses thereof in the treatment of acute infections of the eye and compositions for intraocular injection of therapeutically effective quantities of anti-bacterial and anti-inflammatory agents, as well as methods for fabricating the compositions and for using them in intraocular injections.  These agents and methods are highly useful for "dropless" cataract surgery, something that is attractive to both eye surgeons and patients who suffer from cataracts.

11.    Since 2014, Imprimis has sold more than $4.3 million worth of products under the Imprimis marks in North America alone.  Since that same year, Imprimis has spent more than $4 million in the United States advertising and promoting the Imprimis marks.  In addition, over fifty (50) articles concerning Imprimis products and mentioning the Imprimis marks have appeared recently in major ophthalmic surgery center-targeted trade publications.

12.    The products manufactured, distributed and sold by Imprimis bearing the Imprimis marks have become well known in the United States and throughout the

1  world both by users of such products and the public generally as being products of

2  high quality having their exclusive origin with Imprimis.

3       13.    As a result of the recognized quality of Imprimis' products and its

4  extensive advertising and promotion of the Imprimis marks in the United States and

5  throughout the world, Imprimis has developed an acquired valuable good will that is

6  directly associated with the Imprimis marks.

7                 DEFENDANTS' WRONGFUL COURSE OF CONDUCT:

8                 MARKETING IN VIOLATION OF FEDERAL LAW

9       14.    The U.S. Food, Drug and Cosmetic Act ("FDCA") places heavy

10 restrictions on commercial advertising and marketing of drugs and specifically

11 restricts the commercial advertising and marketing of compounded drug formulations.

12 In order for a company to make public claims of the effectiveness of a drug, the drug

13 in question must be approved of by the U.S. Food and Drug Administration (the

14 "FDA"). If the drug is not approved of by the FDA, or is a compounded drug

15 formulation, a company is restricted on their ability to make public representations

16 and claims on the effectiveness of these drug.

17      15.    The FDA has publicly stated, "*Federal law generally requires that*

18 *prescription drugs in the U.S. be shown to be both safe and effective **prior to***

19 ***marketing** (emphasis added)…Furthermore, FDA's review of the applicant's labeling*

20 *insures that health care professionals and patients have the information necessary to*

21 *understand a drug product's risks and its safe and effective use…The Agency has*

22 *serious concerns that drugs marketed without required FDA approval may not meet*

23 *modern standards for safety, effectiveness, quality, and labeling. Physicians and*

24 *other healthcare practitioners, along with consumers, cannot assume that all*

25 *marketed drugs have been found by the FDA to be safe and effective. For a variety of*

26 *historical reasons, some drugs, mostly older products, continue to be marketed*

27 *illegally in the U.S. without required FDA approval…The lack of evidence*

28

1  *demonstrating that these unapproved drugs are safe and effective is a significant*

2  *public health concern.*[1]

3       16.    These laws recognize that the advertising of non-approved FDA drugs is

4  deceptive because it conveys to consumers, based upon existing FDA rules and

5  regulations, the net impression that such drugs: (i) are in fact approved of by the

6  FDA, (ii) make only positive contributions to a patient's health; and (iii) do not pose

7  any negative health related side effects.

8       17.    Imprimis is aware of FDA and FDCA restrictions on advertising and

9  marketing drugs and follows such restrictions and guidelines, severely limiting the

10 marketing disclosures Imprimis makes to its customers and the public in general.

11      18.    Ocular Science is currently publicly marketing non-FDA approved post-

12 operative compounded formulations including drop formulas and an injection formula

13 for administration during surgery.  These include: (i) Pred-Moxi (prednisolone sodium

14 phosphate and moxifloxacin hydrochloride) ("Pred-Moxi"), a four dose per day eye drop

15 combining a steroid and an antibiotic to reduce pain and inflammation in the eye;  (ii)

16 Pred-Moxi-Ketor (prednisolone sodium phosphate, moxifloxacin hydrochloride and

17 ketorolac tromethamine) ("Pred-Moxi-Ketor"), a four dose per day eye drop that

18 combines a steroid, an antibiotic, and a non-steroidal anti-inflammatory; (iii) Pred-Ketor

19 (prednisolone sodium phosphate and ketorolac tromethamine) ("Pred-Ketor"), a four

20 dose per day drop that combines a steroid and a non-steroidal anti-inflammatory;  (iv)

21 Pred-Levo (prednisolone sodium phosphate and levofloxacin) ("Pred-Levo"), a two dose

22 per day drop that combines a steroid and an antibiotic, and (v) Dex-Moxi

23 (dexamethasone ophthalmic and moxifloxacin hydrochloride) ("Dex-Moxi"), a formula

24 intended for intraocular injection into the anterior chamber of the eye. (Pred-Moxi, Pred-

25 Moxi-Ketor, Pred-Ketor, Pred-Levo and Dex-Moxi may be referred to hereinafter

26 collectively as the "Ocular Science Formulations").

27

28 [1]      http://www.fda.gov/drugs/guidancecomplianceregulatoryinformation/enforcementactivitiesbyfda/selectededenforc ementactionsonunapproveddrugs/default.htm.

6

19.     While the <u>sale</u> of compounded drugs in general do not need to be approved of by the FDA (they are governed by state laws, rules and regulations), Ocular Science has made, and continues to make, illegal claims in their <u>advertising</u> and <u>marketing</u> of the Ocular Science Formulations in violation of the FDCA and California laws that govern such advertising and marketing. These claims, disclosed in Ocular Science's online website (www.ocularscience.com) and outlined in ***Exhibit A*** attached hereto, include, but are not limited to:

(i)     In the coming year, they are set to release an Amniotic Drop, revolutionizing the patient experience and *<u>reducing dry eye and inflammation</u>* through exceptional post-operative care (***Exhibit A***, Page 1)(*emphasis added*).

(ii)    We created and optimized DROPLET to help physicians *<u>achieve the best patient outcomes</u>* at the lowest patient cost (***Exhibit A***, Page 2)(*emphasis added*).

(iii)   These formulas *<u>promote rapid healing</u>* and are engineered with patient adherence in mind. (***Exhibit*** A, Page 2)(*emphasis added*).

(iv)    Our unique formulas require less effort from the patient and *<u>lead to higher efficacy</u>*. (***Exhibit A***, Page 2)(*emphasis added*).

(v)     Pred-Moxi is a four dose per day eye drop that combines a steroid and an antibiotic to *<u>reduce pain and inflammation in the eye</u>*.  (***Exhibit A***, Page 2)(*emphasis added*).

(vi)    Read more about the *<u>proven effectiveness</u>* (***Exhibit A***, Page 2)(*emphasis added*).

(vii)   Read more about the *<u>proven effectiveness</u>* (***Exhibit A***, Page 4)(*emphasis added*).

(viii)  The formula is completely clear, allowing a patient to leave your office *<u>without the milkiness that typically occurs</u>* (***Exhibit A***, Page 4)(*emphasis added*).

(ix)    Our latest product, an amniotic eye drop, is the *<u>first of its kind for dry eye and wound healing</u>*. (***Exhibit A***, Page 5)(*emphasis added*)

1   (x)   This drop can be safely stored in a home freezer *while retaining its*

2   *efficacy*. (**Exhibit A**, Page 5)(*emphasis added*).

3   (xi)   New research indicates that secretions from stem cells found in Ocular

4   Science's amniotic fluid can *restore balance and calm this chronic inflammation*.

5   (**Exhibit A**, Page 5)(*emphasis added*).

6   (xii)   Ocular Science's amniotic eye drops have over 100 cytokines, growth

7   factors and anti-infmallatory [sp] molecules, including key mediators like

8   thrombospondin-1(TSP-1), WNT 4, PGE2 and GDF11, *which modulate and restore*

9   *balance to tears*. (**Exhibit A**, Page 5)(*emphasis added*).

10   (xiii)   Read more about the *proven effectiveness* (**Exhibit A**, Page 6)(*emphasis*

11   *added*).

12   20.   Ocular Science's promotion, marketing and advertising as outlined

13   above is false and misleading, and part of an extensive promotional, marketing and

14   advertising campaign designed to increase the sales of the Ocular Science

15   Formulations. This campaign and these misrepresentations portray to consumers that

16   the Ocular Science Formulations are in fact approved of by the FDA (which they are

17   not), which in turn affects their decision in which products to purchase. Ocular

18   Science's misrepresentations have and will continue to mislead consumers into

19   believing incorrectly that the Ocular Science Formulations are FDA approved (which

20   they are not). Meanwhile, Imprimis has and continues to abide by the FDCA and

21   FDA guidelines and does not make such restricted and illegal claims, thus providing

22   Ocular Science an unfair competitive advantage over Imprimis.

23   DEFENDANTS' WRONGFUL COURSE OF CONDUCT:

24   TRADEMARK INFRINGEMENT

25   21.   Ocular Science is currently marketing the Ocular Science Formulations.

26   22.   These Ocular Science Formulation products are "copycat" formulations.

27   Ocular Science has been marketing them using the name DROPLET (as shown on its

28   website).  The name DROPLET is confusingly similar to Imprimis' marks (including

without limitation GO DROPLESS!, LESSDROPS, DROPLESS CATARACT THERAPY, and DROPLESS THERAPY.  By use of it, Ocular Science has created confusion and harmed the reputation of Imprimis' inventions, to the result that some physicians who previously ordered from Imprimis (and who have monthly cataract cases in the hundreds) have stopped doing so.  The confusion in the market includes the false belief that the goods Ocular Science is selling belong to, are sponsored by, or are affiliated with Imprimis.

FIRST CLAIM FOR RELIEF

(Infringement of Trademarks)

(Against All Defendants)

23.     Imprimis realleges and incorporates by reference as though fully set forth in the preceding paragraphs 1 through 22.

24.     Imprimis owns the Imprimis marks.  Under common law, Imprimis has the exclusive right to the use of said mark and said marks are valid, subsisting, and in full force and effect.

25.     Beginning in 2015, Ocular Science began selling a similar product under the name Dropless.

26.     Ocular Science' use of the designation "DROPLET"  has caused, and is likely to continue to cause, confusion on the part of those persons who purchase ophthalmic compositions containing triamcinolone acetate, moxifloxacin hydrochloride, triamcinolone acetate, and vancomycin for the purpose of treating infections of the eye and compositions and for intraocular injection of therapeutically effective quantities of anti-bacterial and anti-inflammatory agents.  Such use has misled and deceived, and will continue to mislead and deceive, the public as to the source and sponsorship of Ocular Science's products.

27.     Imprimis, however, not Ocular Science, is the senior user of the Imprimis marks, with an actual date of first use antedating that claimed by Ocular Science.  Imprimis is entitled to use, in interstate commerce, its marks in the goods identified in

commerce and also on goods which, in the minds of the consuming public, are considered to be closely related to the goods listed in those registrations.

28.    Ocular Science's continued use of the "DROPLET" mark based on its alleged date of first use is likely to cause confusion, deception, and mistake in the minds of the consuming public, all to the detriment of Imprimis, its trademark reputation, goodwill, and business.

29.    For the foregoing reasons. Imprimis has been damaged by Ocular Science's allegation of trademark rights superior to those of Imprimis, and will continue to be damaged, unless this Court intervenes.

30.    As the direct and proximate result of Ocular Science's wrongful acts, Imprimis has been damaged in an amount to be proven at trial.

31.    The acts of infringement described above are willful, deliberate and in reckless disregard of Imprimis' rights.  On this basis, Imprimis is entitled to an award of punitive damages in an amount sufficient to make an example of Ocular Science and to deter others from similar misconduct in the future.

<u>SECOND CLAIM FOR RELIEF</u>

(Common Law Unfair Competition)

(Against All Defendants)

32.    Imprimis realleges and incorporates by reference as though fully set forth in the preceding paragraphs 1 through 31.

33.    This claim for relief arises under the common law of trademarks and unfair competition.

34.    The use of the "DROPLET" name and mark by defendants will lead to the erroneous belief that Ocular Science's products originate with, or are sponsored by, or are endorsed or licensed by Imprimis, or that Imprimis is somehow associated with the business or products of Ocular Science, thus enabling Ocular Science to misappropriate and unfairly trade upon Imprimis' valuable goodwill and the renown of its mark, and subjecting Imprimis' goodwill and reputation in the Imprimis marks

to the hazards and perils to Ocular Science's business activities (over which Imprimis has no control whatsoever).

35. The foregoing acts of Ocular Science constitute unfair competition and infringement of Imprimis' common law rights in the Imprimis marks. As a direct and proximate result of Ocular Science's infringement and unfair competition, Imprimis has been damaged in an amount to be proven at trial.

<u>THIRD CLAIM FOR RELIEF</u>

(Violation of Unfair Competition Law)

(Against All Defendants)

36. Imprimis realleges and incorporates by reference as though fully set forth in the preceding paragraphs 1 through 35.

37. This cause of action arises under the Unfair Competition Law, Cal. Business & Professions Code, § 17200 *et seq.* (the "UCL").

38. Defendants' practices described hereinabove constitute unlawful, unfair, and fraudulent business acts and practices proscribed by the UCL. Defendants' actions significantly threaten to harm competition and have harmed competition.

39. Plaintiff is entitled to injunctive relief barring defendants from further unlawful, unfair, and fraudulent business acts and practices, as well as restitution of all sums collected by defendants as a result thereof.

<u>FOURTH CLAIM FOR RELIEF</u>

(Common Law Trademark and Trade Name Infringement)

(Against All Defendants)

40. Imprimis realleges and incorporates by reference as though fully set forth in the preceding paragraphs 1 through 39.

41. This count arises under the common law of trademarks and unfair competition.

42. Ocular Science's use of the Imprimis marks is likely to cause purchasers to believe that Ocular Science's business is part of Imprimis' organization and is connected

with it, that the products Ocular Science sells are those of Imprimis, and that Ocular Science is selling at the direction of Imprimis.  In fact, none of these things is true.

43.     The foregoing acts of Ocular Science constitute trademark and trade name infringement under the common law.

44.     As a direct and proximate result of Ocular Science's infringements, Imprimis has suffered, and will continue to suffer, irreparable injury unless and until the Court enjoins Ocular Science from further infringements.

FIFTH CLAIM FOR RELIEF

(For Declaratory Relief under 28 U.S.C. § 2201)

(Against All Defendants)

45.     Imprimis realleges and incorporates by reference as though fully set forth in the preceding paragraphs 1 through 44.

46.     There exists an actual controversy between the parties as to their rights and liabilities vis-a-vis one another and with respect to the Ocular Science mark and the Imprimis marks.

47.     Imprimis is entitled to a decree declaring the parties' rights and liabilities under the provisions of 28 U.S.C. § 2201.

SIXTH CLAIM FOR RELIEF

(For Injunctive Relief)

(Against All Defendants)

48.     Imprimis realleges and incorporates by reference as though fully set forth in the preceding paragraphs 1 through 47.

49.     By reason of Ocular Science's actions, Imprimis has been seriously and irreparably damaged,  Imprimis' business reputation has been injured,  and Imprimis has suffered dilution of the distinctive quality of its marks.  Unless and until Ocular Science is restrained, Imprimis will continue to be so damaged until this action can proceed to final judgment.

50.     Ocular Science's wrongful conduct, unless and until enjoined by order of

this Court, will cause great and irreparable injury to Imprimis.  The goodwill is established by Imprimis, and being tarnished by Ocular Science, is irreplaceable and cannot be remedied adequately by recovery of money damages.

51.    Imprimis requests that this Court grant a temporary restraining order and preliminary and permanent injunctions enjoining Ocular Science and its agents, servants, and employees, and all persons acting under, in concert with, or for them from doing the following:

(i)    from continuing the use of the infringements identified hereinabove;

(ii)    from using in connection with its business, except as expressly authorized by Imprimis, any reproduction or colorable imitation of the word "DROPLET";

(iii)    from making in any way whatsoever any statement or representation or performing any act likely to lead the public or individual members of the public to believe that Ocular Science is in any manner, directly or indirectly, associated or connected with, or licensed, authorized or approved by Imprimis; and

(iv)    from committing any other act which infringes on Imprimis' marks or constitutes unfair competition against Imprimis or its licensees.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Imprimis prays for relief as follows:

A.    That the Court award Imprimis such general and special damages as it has sustained by reason of Ocular Science's infringements and unfair competition according to proof at trial and that, because of the willful nature of said infringements, the Court enter judgment for Imprimis for those damages and for three times the amount of those damages pursuant to section 35 of the Lanham Act, 15 U.S.C. § 1117;

B.    For judgment that Ocular Science has violated section 32 of the Lanham Act, 15 U.S.C. § 1114;

C.     For judgment that Ocular Science has violated section 43(a) of the Lanham Act, 15 U.S.C. §1125(a);

D.     For judgment that Ocular Science has engaged in unfair competition under the common law;

E.     For judgment that defendants have engaged in unlawful, unfair, and/or fraudulent business acts or practices within the meaning of the UCL;

F.     For preliminary and permanent injunctions enjoining Ocular Science:

(i)     from continuing the use of the infringements identified hereinabove;

(ii)     from using in connection with its business, except as expressly authorized by Imprimis, any reproduction or colorable imitation of the word "DROPLET";

(iii)     from making in any way whatsoever any statement or representation or performing any act likely to lead the public or individual members of the public to believe that Ocular Science is in any manner, directly or indirectly, associated or connected with, or licensed, authorized or approved by Imprimis;

(iv)     from committing any other acts which infringes on Imprimis' marks or which constitutes unfair competition against Imprimis or its licensees or which comprises unlawful, unfair, and/or fraudulent business acts or practices;

G.     That the Court order Ocular Science's registrations, if any, should they be granted by the USPTO, be abandoned in whole and order the register rectified accordingly;

H.     That the Court order Ocular Science to account and pay over to Imprimis all gains, profits and advantages derived by him from said trademark infringement and unfair competition;

I.     That the Court order Ocular Science to deliver up and destroy all signs, devices, literature, advertising and other material bearing any of Imprimis' marks or colorable imitations thereof;

J.      That the Court assess Ocular Science Imprimis' attorneys' fees and award those fees to Imprimis pursuant to section 35 of the Lanham Act, 15 U.S.C. § 1117, given the willful nature of Ocular Science's infringements;

K.      That the Court assess Ocular Science punitive damages because of the willful nature of its infringements;

L.      That Ocular Science be ordered to file with the Court and serve on Imprimis' counsel, within thirty (30) days after service of any injunction(s) issued herein, or within such other reasonable time as the Court shall direct, a report in writing and under oath, setting forth in detail the manner in which Ocular Science has complied with any such injunction(s);

M.      That the Court assess pre-judgment and post-judgment interest and costs of suit (including all disbursements and expenses of this action) against defendants, and award such interest and costs to Imprimis; and

N.      That Imprimis have such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Dated: February 3, 2016          LAWTON LAW FIRM


                                 By:    s/Dan Lawton
                                        Dan Lawton
                                        Attorneys for Plaintiff Imprimis Pharmaceuticals, Inc.

<u>DEMAND FOR TRIAL BY JURY AND FOR SPEEDY HEARING</u>

Plaintiff hereby demands a trial by jury as to all issues triable by jury.  Plaintiff also requests a speedy hearing of its claim for declaratory judgment pursuant to Fed. R. Civ. P. 57.

Respectfully submitted.

Dated: February 3, 2016                LAWTON LAW FIRM


By:   s/Dan Lawton
      Dan Lawton
      Attorneys for Plaintiff Imprimis Pharmaceuticals,
      Inc.